**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

| | |
|---|---|
| TODD FIDLER,<br><br>Plaintiff,<br><br>v.<br><br>ORLANDO CREDIT UNION f/k/a ORLANDO FEDERAL CREDIT UNION,<br><br>Defendant. | **Case No.:**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. **FCRA, 15 U.S.C. § 1681 *et seq.*** |

Plaintiff TODD FIDLER ("Plaintiff") through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendant ORLANDO CREDIT UNION f/k/a ORLANDO FEDERAL CREDIT UNION ("Orlando CU" or "Defendant").

**INTRODUCTION**

1. Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by Defendant.

2. Plaintiff alleges that alleges that Orlando CU failed to investigate and correct disputed information, in violation of 15 U.S.C. § 1681s-2(b).

3. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

6. Plaintiff Todd Fidler ("Plaintiff") is a natural person who resides in Lake County, Florida.

7. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

8. Defendant Orlando Credit Union f/k/a Orlando Federal Credit Union ("Orlando CU") is a financial institution with its principal place of business at 945 South Orange Avenue, Orlando, Florida.

## FACTUAL BACKGROUND

9. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

10. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

11. The FCRA is intended to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to

privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

12. Experian and Transunion, two of the three major consumer reporting agencies (collectively, the "CRAs") in the United States, regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports.

13. CRAs regularly obtain consumer bankruptcy information to include in consumer reports.

14. CRAs regularly seek out and procure public record information, including consumer bankruptcy filing and discharge information, with the intention of including this bankruptcy information on the consumer reports they sell to third parties such as lenders.

15. The diligence CRAs exercise in uncovering and recording consumer bankruptcy filings is not replicated in their subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

16. CRAs' unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by 15 U.S.C. § 1681e(b).

17. CRAs know, or should have known, the information they report about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in its own files.

18. The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Equifax and Experian) to make lending decisions.

19. A consumer who has obtained a bankruptcy discharge and has an account reporting with outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately reporting with a zero-dollar balance.

20. Despite the availability of accurate consumer information, CRAs regularly report inaccurate information about accounts after consumers receive a Discharge Order.

21. CRAs regularly publish consumer information that conflicts with information: provided by data furnishers like Defendant, already included in their credit files, contained in public records that they regularly access, or sourced through their independent and voluntary efforts.

22. Defendant and CRAs also know that failing to report the effect of a discharge on consumer account tradelines, while reflecting a bankruptcy on a credit report, would reasonably be understood to communicate to the world that the consumer had been in bankruptcy but had not received a discharge of a particular account. This not only inaccurately/incorrectly reflects an outstanding debt, but also would reasonably suggest to a consumer and those reviewing the consumer's credit report that the consumer was guilty of a bad act for which he or she did not deserve a discharge of a particular debt.[1]

---

[1] Indeed, a bankruptcy discharge is for the "honest but unfortunate debtor," *Grogan v. Garner*, 498 U.S. 279, 287 (1991), and will not be provided to someone who filed bankruptcy in bad faith, failed

*Allegations Specific to Credit Reporting of Plaintiff*

23. Plaintiff filed a Chapter 7 Bankruptcy on October 31, 2024, in the United States Bankruptcy Court in the Middle District of Florida, Orlando Division.

24. A reaffirmation agreement between Plaintiff and Defendant Orlando CU was filed on January 31, 2025.

25. Plaintiff received an Order of Discharge on February 18, 2025.

26. Plaintiff timely rescinded the reaffirmation agreement on March 23, 2025 and subsequently returned the subject vehicle to Orlando CU.

27. The Orlando CU auto loan was a pre-petition debt for which Plaintiff's personal liability was eliminated upon entry of the Discharge Order and timely rescission of the reaffirmation agreement.

28. Upon rescission, the Orlando CU Account was required to be reported with a zero-dollar balance and a status reflecting no personal liability.

29. CRAs prepared one or more consumer reports concerning Plaintiff after Plaintiff was discharged from Chapter 7 Bankruptcy and Plaintiff filed a timely rescission of the reaffirmation agreement.

30. Despite the rescission and vehicle return, CRAs continued reporting the Orlando CU auto loan (the "Account") as open with a balance of $39,485 and a past due amount of $1,384.

---

to report assets, fraudulently transferred assets, engaged in reprehensible pre-bankruptcy conduct such as fraud, defalcation or embezzlement, or caused willful and malicious injury. 11 U.S.C. §§ 727(a), 523(a).

31. Accordingly, on or about August 11, 2025, Plaintiff sent disputes regarding the Account via certified mail to Experian and Transunion, asserting that the Account was inaccurate, explaining that the reaffirmation agreement had been rescinded and that the debt was no longer personally enforceable due to the bankruptcy discharge, and requesting that this information be removed and/or corrected.

32. Upon information and belief, Orlando CU was notified of Plaintiff's disputes.

33. Following receipt of Plaintiff's disputes, Orlando CU failed to conduct a reasonable investigation, correct or remove the inaccurate Account from the Plaintiff's credit file.

34. At all times pertinent hereto, Defendant's violations of the FCRA were willful, and carried out in reckless disregard for Plaintiff's rights as set forth under 15 U.S.C. § 1681s-2.

35. Accordingly, Plaintiff is entitled to statutory, actual, and punitive damages under 15 U.S.C. § 1681n.

36. Additionally, Defendant's violations of the FCRA were negligent. Accordingly, Plaintiff is entitled to statutory and actual damages under 15 U.S.C. § 1681o.

37. In any event, Defendant is liable for Plaintiff's reasonable attorneys' fees and costs, pursuant to 15 U.S.C. §§ 1681n and 1681o.

38. As a direct and proximate result of Defendant's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has

been harmed in his daily life, by the impact that this derogatory information has had on his credit score and the reputational harm that Plaintiff has suffered as a result of having this negative information attributed to him and disseminated to creditors. For example, Plaintiff has been denied credit opportunities due to these derogatory inaccuracies.

39. The inaccurate reporting on Plaintiff's credit report has caused and continues to cause significant harm in Plaintiff's daily life. Plaintiff relies on the accuracy of his credit reports to obtain credit and housing. Because of Defendant's inaccurate reporting, Plaintiff's credit score has been unfairly lowered, resulting in denials of credit and difficulty obtaining financial products that would otherwise have been available. The false derogatory information also undermines Plaintiff's reputation for financial responsibility and subjects Plaintiff to embarrassment and frustration each time his credit is reviewed or discussed with potential lenders.

40. Beyond financial consequences, the inaccurate reporting has caused Plaintiff substantial emotional distress, anxiety, and inconvenience. Plaintiff has spent considerable time and effort disputing the false information with credit reporting agencies and creditors, monitoring his credit, and attempting to mitigate the ongoing damage. Each time Plaintiff applies for credit or a loan, the inaccurate information resurfaces and creates uncertainty about his financial future. The continued presence of false negative data on Plaintiff's report has caused Plaintiff to lose confidence in the fairness of the credit system and to suffer tangible harm to his personal and professional life.

41. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of

sleep, humiliation, stress, anger, frustration, shock, embarrassment, reputational harm, violation of privacy, and anxiety.

42. Defendant's conduct exacerbated Plaintiff's frustration during the already stressful post-bankruptcy period by hindering Plaintiff's ability to rebuild Plaintiff's credit.

**COUNT I**
**FAILURE TO INVESTIGATE DISPUTE**
**15 USC § 1681s-2(b)**
**AGAINST ORLANDO CU**

43. Plaintiff repeats and realleges the foregoing allegations in paragraphs 1-42 as if fully set forth herein.

44. Furnishers of credit information have a duty under the FCRA to investigate disputes from consumers as to the accuracy of information being reported.

45. On or about August 11, 2025, Plaintiff initiated disputes with the credit bureaus disputing the accuracy of the account being reported by Orlando CU.

46. Upon information and belief, Orlando CU received notice of these disputes from the credit bureaus.

47. Orlando CU was obligated, pursuant to section 1681s-2(b) of the FCRA to conduct a complete and thorough investigation with respect to Plaintiff's dispute.

48. Even after Plaintiff properly disputed the Account with the credit reporting agencies, Orlando CU refused to conduct a reasonable investigation and continued inaccurately reporting the Account on Plaintiff's credit report.

49. Orlando CU's conduct violated section 1681s-2(b) of the FCRA.

50. As a result of Orlando CU's conduct, Plaintiff was harmed, as discussed above.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendant for the following:

(a) Declaratory judgment that Defendant violated the FCRA, 15 U.S.C. § 1681*et seq.*;

(b) An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c) An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d) An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2);

(e) Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(f) Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

**JURY DEMAND**

Plaintiff hereby demands a jury trial on all issues so triable.

Dated: August 18, 2026

/s/ Joseph H. Kanee
Joseph H. Kanee, Esq.
Florida Bar No. 1040922
MARCUS & ZELMAN, LLC
1508 SW 23rd Street
Fort Lauderdale, FL 33315
Tel.: (848) 346-4358
Email: joseph@marcuszelman.com
*Attorney for Plaintiff*